
RECEIVED
BY
JUN 1 6 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

PAUL WAYNE MOORE

versus

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

CIVIL ACTION NO. 05-0696

JUDGE HICKS

**REFERRED TO:**
**MAGISTRATE JUDGE HORNSBY**

## MEMORANDUM RULING

**Introduction**

Paul Wayne Moore ("Plaintiff") applied for disability insurance benefits and Supplemental Security Income payments based on pain and related limitations caused by back problems. Plaintiff was 50 years old at the time ALJ Charles Lindsay denied his claim. He has a high school education and past work experience that includes employment as a dairy farmer, truck driver, carpenter, roustabout and general laborer.

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (parallel regulations governing claims for Supplemental Security Income) and described in Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003). He found that Plaintiff was not engaged in substantial gainful activity (step one) and had severe impairments (step two) as follows: history of L5 burst fracture, status post-laminectomy and decompression L4-L5 and herniated nucleus pulposus, L3-4 on the left with spondylosis of the lumbosacral spine. The

impairments were found not to meet or equal a listed impairment (step three), so the ALJ assessed Plaintiff's residual functional capacity ("RFC").

After reviewing the medical evidence and the testimony from the hearing, the ALJ concluded that Plaintiff had an RFC that precluded him from performing work that required he lift in excess of 30 pounds, perform the postural activities associated with work on more than an occasional basis, or stand and/or walk more than six hours in a work day. He also found that Plaintiff was precluded from performing work that does not allow for a sit/stand option and that Plaintiff, as a result of pain, has a moderate limitation of ability to maintain attention and concentration for extended periods. Tr. 23.

A vocational expert ("VE") testified that a person with that RFC could not perform Plaintiff's past relevant work (step four), and the ALJ so found. The VE also identified a number of other jobs that a person with such an RFC could perform. The ALJ, based on that testimony and using the Medical-Vocational Rules as a framework, decided at step five that Plaintiff was not disabled.

The Appeals Council denied review, and Plaintiff filed this civil action seeking judicial relief pursuant to 42 U.S.C. § 405(g). Both parties filed written consent to have a magistrate judge decide the case and, pursuant to 28 U.S.C. § 636(c) and the standing order of the district court governing social security cases, the district judge referred this action to the undersigned for decision and entry of judgment.

**Issue on Appeal**

Plaintiff argues on appeal that the ALJ erred in improperly disregarding his testimony, in particular his testimony about back and leg spasms and a resulting foot cramp, without making the credibility findings required by the regulations.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Relevant Evidence**

Plaintiff testified that his back had "a lot of pain" and that he did not get much sleep. He reported that he was taking Celebrex, Ultram and, once in a while, hydrocodone, that would "knock it for a while." Tr. 321. Plaintiff said he had numbness and tingling and burning in his left leg that goes down into his foot. Tr. 321.

Plaintiff testified that he did not do any housework, either inside or outside, and that he sits and reads most of the day. He said he often changes his position to avoid pain. The

only other thing he does to pass time is collect model cars. He said he could still drive but does so "very little." Tr. 321-22.

Plaintiff testified that he could not bend over or squat without hurting himself. He did not use a back brace or cane, but he does use a guard rail if available. He said his worst pain was in his back, which he rated at 7 or 8 on a 10 scale, with that degree of pain existing 7 to 10 hours in a 24-hour period. Pain medication reduces the pain "a little bit." Tr. 324-25.

Plaintiff again described the tingling and burning that radiates down his left leg, and he assigned it a pain level of 8. Tr. 325. Plaintiff's representative then asked Plaintiff if he had back spasms. Plaintiff reported that he did and that they "go down into my leg." Plaintiff said he had such spasms "at least once a day, sometimes twice." He estimated that each spasm lasts 10 or 15 minutes and that it takes 10 or 15 minutes to recover afterwards. He described the spasms as "like you get a charley horse in your feet and your toes draw up and you've got to straighten that foot out to get it to quit." Plaintiff's representative asked if he had to use his hands to accomplish that task, and Plaintiff reported that he could "do it, just standing on it" for 10 or 15 minutes. Tr. 326-27.

After the VE testified in response to the ALJ's questions and identified jobs that a person with Plaintiff's RFC and vocational factors could perform, Plaintiff's representative asked the VE to assume an additional limitation: if the individual had spasms in his leg two times a day, without forewarning, and required about 10-20 minutes per day to recover and get back to work, would that have any impact on the jobs the VE identified earlier? The VE

answered that if the employee would need time beyond the normal lunch break or morning and afternoon breaks for such purposes then the limitation "would eliminate jobs." She later said that if it was a "continual problem," then the employee is "not going to maintain employment." Tr. 334-35.

**Analysis**

The ALJ, in his written decision, fairly summarized Plaintiff's testimony and included a mention that Plaintiff "testified that he also experiences spasms in his back radiating into his leg once or twice a day and lasting from 15 to 20 minutes." Tr. 21. After reviewing the medical records, which included significant periods passing without any required treatment and a consultative report that found no evidence of muscle spasm, the ALJ acknowledged that the back impairments "can be expected to result in pain and although the degree of pain that is being alleged is not fully supported by the objective medical evidence, the undersigned does not doubt that [Plaintiff] experiences pain that affects his ability to maintain attention and concentration to work tasks." Tr. 23. The "findings" portion of the decision includes a general statement that "the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision." Tr. 25.

The ALJ did not make a specific finding with respect to the credibility of Plaintiff's complaints of daily spasms. Perhaps the general assessment of Plaintiff's pain complaints was intended to encompass the allegations of spasms, but the two symptoms are different enough, and the spasms received sufficient individual attention, that the court may not safely

assume that the pain assessment was also directed at the spasm claims.

The regulations, set forth at 20 C.F.R. § 404.1529 and § 416.929, require consideration of all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. If the claimant has a medically determinable impairment that could reasonably be expected to produce the symptoms alleged, the agency must evaluate the intensity, persistence and functionally limiting effects of the symptoms. "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." Social Security Ruling 96-7p. The adjudicator must consider the objective medical evidence, the claimant's statements about the symptoms, and other relevant evidence such as the claimant's daily activities, effectiveness and side effects of medication, or other treatment used to relieve a symptom. "It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id.

An ALJ need not specifically discuss every factor set forth in the regulations to withstand judicial review of a credibility assessment regarding a symptom. See Hillman v.

Barnhart, 2006 WL 690879 (5th Cir. 2006). And if an ALJ has substantially complied with the regulations in the assessment of the claimant's credibility, that decision is entitled to judicial deference. Johnson v. Bowen, 864 F.2d 340, 347 (5th Cir. 1988); Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994).

In this case, however, there has not been a specific evaluation and finding at the agency level regarding Plaintiff's squarely presented testimony that he experiences muscle spasms that (if accepted) the VE indicated would change her testimony and could change the ultimate decision. Dr. Simonton did not observe any muscle spasm in the lumbar area. Tr. 299. On the other hand, there is an indication that Plaintiff was treated for muscle spasms. Tr. 274 (noting that Plaintiff reported the spasms in his left leg had improved). Plaintiff's reported activities of daily living were very few, but a medical report following a visit to an emergency room stated that Plaintiff experienced pain after he had been swinging an ax and lifting cinder blocks. Tr. 165.

The court could review the relevant evidence, assess the factors relevant under the regulations and make an assessment of Plaintiff's credibility about spasms, but that would exceed the limited role that courts are to play under Section 405(g). The court is not to decide the case *de novo* but to review the agency's decision to determine whether it is supported by substantial evidence. There has not been a specific agency decision of the spasm claim in this case that the court can effectively review. Procedural perfection is not required of the agency, but it may not overlook significant lines of evidence or leave

unresolved significant conflicts in the evidence. Draper v. Barnhart, 425 F.3d 1127 (8th Cir. 2005); Henderson v. Apfel, 179 F.3d 507, 514 (7th Cir. 1999). See also Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (where credibility is a critical factor, the ALJ must either explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding). There is not a sufficient finding with respect to the credibility of the spasm claim for the court to properly review the agency's decision, so a sentence four reversal and remand is warranted.

Plaintiff's principal complaint on appeal regards the non-assessment of the spasm testimony, but he also complains in footnote 11 of his brief that the ALJ's assessment of the pain testimony, in general, was not in compliance with the regulations. Plaintiff should, on remand, communicate to the agency with clarity his complaints about the prior decision so that the agency will have the best opportunity to address those points. A reasoned review of subjective complaints will seldom be disturbed by the courts, but reversal is required when a potentially result-changing line of evidence is not addressed. For these reasons, the Commissioner's decision to deny benefits is, pursuant to the fourth sentence of 42 U.S.C. § 405(g), reversed and remanded to the agency for further proceedings. A judgment consistent with this ruling will be entered.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 16th day of June, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE